**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | |
|---|---|
| GARY NELSON | : |
| 1217 Shetland Court | : |
| Yardley, PA 19067 | : |
| | :    CIVIL ACTION |
|        Plaintiff, | : |
| | :    No.: _____ |
|    v. | : |
| | : |
| SPARK THERAPEUTICS, INC. | : |
| 3737 Market Street | :    **JURY TRIAL DEMANDED** |
| Philadelphia, PA 19104 | : |
|      and | : |
| ROCHE DIAGNOSTICS CORPORATION | : |
| 9115 Hague Road | : |
| Indianapolis, IN 46250 | : |
| | : |
|        Defendants. | : |

_____:

## CIVIL ACTION COMPLAINT

Plaintiff, Gary Nelson, by and through his undersigned counsel, hereby avers as follows:

## I.    INTRODUCTION

1.    Plaintiff has initiated this action to redress violations by Defendants of the American's with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff was unlawfully terminated by Defendants, and he suffered damages more fully described/sought herein.

---

[1] The reference herein to a claim under the Pennsylvania Human Relations Act ("PHRA") is for notice purposes only. It is currently omitted from the Count section below as a pursued claim. The PHRA claims require 1 of administrative exhaustion (unless otherwise waived by Defendants). Such PHRA claims will mirror identically all other claims in this case (when amendment hereto is sought).

## II.    JURISDICTION AND VENUE

2.    This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3.    This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.    Plaintiff is proceeding herein under ADA and the ADEA and has properly exhausted is administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## III.    PARTIES

6.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.    Plaintiff is an adult individual, with an address as set forth in the caption.

8.     Spark Therapeutics, Inc. ("Defendant Spark" where referred to individually) is a U.S.-based gene therapy company. This entity is headquartered in Philadelphia at the above-captioned address and focuses in pharmaceutical research, development, and sales.

9.     Roche Diagnostics Corporation ("Defendant Roche" where referred to individually) is an entity that acquired and merged with Defendant Sparks in or about 2019. Thereafter, Defendant Roche has operated Defendant Sparks as a branch, department and/or arm of the overall Defendant Roche business operation(s) and enterprise.

10.     Defendant Roche upon information and belief sets policies within Defendant Spark, oversees operations of Defendant Spark, handles budgeting within Defendant Spark, oversees its management, and utilizes overlapping resources and advertising for Defendant Spark. Defendant Roche publicly advertises that Defendant Spark is one of its offerings and is a "member of the Roche Group."

11.     Upon information and belief, Defendants Spark and Roche are a single, joint and/or integrated employer for the purposes of this lawsuit (and both serve as Plaintiff's statutory employer). They are hereinafter collectively referred to as "Defendants."

12.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV.     FACTUAL BACKGROUND

13.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.     Plaintiff was hired effective on or about May 23, 2022; and in total, Plaintiff was employed with Defendants for approximately 6 months (until termination in or about November of 2022).

15.     Upon hire, Plaintiff was deemed based within Defendants' Philadelphia location, and his job position was that of Procurement Lead for Capex and Facilities. Plaintiff also assisted at times within Defendants' Conshohocken facility (working in a hybrid role at times, as desired by or as helpful to Defendants).

16.     Plaintiff was hired to work for Defendants because he has an exceptional work history, a proven track record of substantial accomplishments (in the industry), and was (and remains) highly skilled. As a result, Plaintiff was a highly-compensated employee earning in excess of $250,000.00 per annum (inclusive of all compensation and benefits).

17.     During Plaintiff's approximate 6-month tenure, he was directly supervised by Luanna Sievern ("Sievern"). Sievern has been and upon information and belief remains Defendants' Vice President of Procurement.

18.     Prior to and upon being hired, Plaintiff was informed he would be responsible for the Capex and Facilities projects approved by Defendants. As of Plaintiff's hire, he was informed there were 6-8 projects totaling around $1.5 billion dollars. Plaintiff was further informed that the timeline on these projects were expected to run ***into and through 2024***. And naturally, during 2022 and 2023, Defendants would continually build and obtain more projects for indefinite work for Plaintiff (and the growth of the department).

19.     The projects and timelines referenced above are important because Defendants ultimately claimed (after 6 months of employment) Plaintiff's job was "eliminated," implying

there was a need for a reduction-in-force for lack of work (a transparent pretext, discussed *ad nauseum infra*).

20.     Upon hire, Plaintiff was given "long-term" goals of building the Procurement Department, creating and establishing more efficient standard operating procedures and policies ("SOPs"), and creating an integrated organization and enterprise (instead of a segregated and siloed units). Plaintiff was further informed *inter alia*, priorities would include:

    a)  Rebuilding a fragmented relationship that existed with current subcontractors. These relations (that were damaged, non-exist or lacking in general) were causing significant complications and resulted in unnecessary additional steps or a slowed pace of project completion (pre-hire of Plaintiff);

    b)  Preparing for the startup of the largest project (known as GTIC), then being approved; and

    c)  Meeting with stakeholders and working on changes in processes that would provide a more consistent processes for Procurement of Capital equipment while also providing control and oversight in a fiduciary manner over which Defendants were managing their spend.

21.     Plaintiff was helping to grow long-term sourcing, database creation, maintenance, and other strategic development(s). In sum, Plaintiff was informed of **a multi-year** focus to help develop Defendants (and his department).

22.     Plaintiff, possessing 40 years of experience, did not take or explore other business or job opportunities in reliance upon his understanding that he was being hired for a long-term (and minimum of *a multi-year*) role. This could not have been made clearer to Plaintiff by Sievern at the inception of Plaintiff's hire with Defendants.

23.     In fact, upon commencing employment and working during his 6-month period of employment, Plaintiff was working well over 40 hours per week and – just as he had been told upon hire – there was more than enough work and business for him to remain employed indefinitely.

24.     Plaintiff received a stellar mid-term evaluation (halfway through his employment), as well as multiple (acknowledged) accolades set forth on the intranet within Defendants. Plaintiff was very successful, and he was making significant achievements in his short tenure (as was being recognized internally).

25.     Plaintiff however is a 62-year-old man with a history of very significant disabilities. These disabilities required disclosure and dialogue commending in the middle of Plaintiff's period of employment.

26.     Plaintiff had a prior stroke and brain tumor. In addition to these health problems (and ongoing complications), Plaintiff suffers from significant knee and back problems (not fully resolved through prior surgeries), Vasculitis, and severe (and at times debilitating) migraines. Plaintiff also requires the use of hearing aides due to severe hearing impairments.

27.     In the months leading up to Plaintiff's abrupt termination from employment, he had many discussions with Sievern about his disabilities, their impacts on him, and potential need for accommodations. By way of examples:

    (a) Plaintiff requested a chair to assist with his back (as he had no assigned desk or office), and would be on his feet in facilities unnecessarily long periods of time;

    (b) Plaintiff informed Sievern that he was suffering from severe migraines, that he had a significant medical history (with other specified health conditions) and that he would need periodic time off for a flareup, shots or a medical visit. Plaintiff's severe migraines are a long-term, chronic condition that started to become significant by the middle of his employment with Defendants; and

    (c) Plaintiff discussed with Sievern that he would at times use a cane because his knee and back were causing him significant problems, when Sievern would see him limping and at times having difficulty walking.

28.     The discussions about Plaintiff's health above are not intended to serve as an exhaustive list of his health complications, nor all discussions with Sievern. Rather, they are just examples of the types of topics discussed.

29.     In short, Plaintiff was working at least 50 hours per week and heavily exerting himself in an environment where he had little opportunity to take breaks – and by the middle of his employment – he was having serious flareups and exacerbations of his health problems. As a result, Sievern was seeing him in pain, limping and he had to disclose his health history to let her know they are chronic but are just flaring up all together around the same time unfortunately.

30.     Plaintiff's discussions about his health with Sievern were ongoing during his last few months of employment *through his last few weeks of employment* (leading up to his termination). During this time, there was a discernable change in demeanor, tone and attitude towards Plaintiff as if Plaintiff was no longer valuable, admired, and was instead - - a burden.

31.     Effective on or about November 9, 2022, Plaintiff was terminated abruptly and without prior notice or indication of a potential separation for any reason.

32.     Plaintiff was told in conjunction with his termination that his role had been "eliminated" due to a decline in Capex needs.

33.     Defendants' purported rationale for Plaintiff's termination was absurd, illogical, and pretextual as the largest project had just been approved and had a timeline that would run through 2024. Additionally, prior to Plaintiff's health disclosures and health problems, Plaintiff was discussing matters to be addressed through 2023 and 2024 with Sievern.

34.     Sievern oversaw Plaintiff's procurement team (including him), which had typically under 5 employees. She was not empathetic or pleasant when Plaintiff was discussing his health complications and accommodation needs. From the context of discussions with her,

she discouraged Plaintiff from taking any time off for medical reasons due to business need(s). Sievern had even shared with Plaintiff another employee was using FMLA leave, implying that it was taking away from productivity of her team in such discussion.

35.     Sievern had a history making up false reasons for termination of employees. For example, Plaintiff was directly told by Sievern during his employment that she: (a) wanted to make up that Adam Bell ("Bell") was going to be "eliminated;" (b) wanted Plaintiff to modify a job description that looks different and heightened in case Bell applies for the new so he wouldn't be qualified (even though it would be the same job); and (c) wanted Plaintiff to proceed as quickly as possible. This occurred early in Plaintiff's employment, and Plaintiff declined and said he would instead try to mentor Bell.

36.     As it turned out, on <u>several</u> occasions Sievern in fact terminated employees on the procurement team claiming they were "eliminated" or reduced for business reasons - - only to repost their jobs and backfill their roles.

37.     Plaintiff was being recognized for his achievements, was given a good evaluation, was discussing 2023-2024 goals and then was blindsided with a purported "job elimination" shortly after discussing long-term disabilities and potential accommodation needs. And Plaintiff was given the same made-up rationale for his termination ("elimination") that Sievern had systematically (and as a matter of pattern) used with other employees she intended to replace (pretextually).

38.     Upon termination, Plaintiff was offered <u>an unsolicited</u> severance package of 8 weeks pay if he waived all discrimination and retaliation legal claims. Plaintiff was employed for less than 1 year, and no policies or rules required a severance package of 2 months of pay to Plaintiff. It is <u>well established</u> that unsolicited offers of severance pay to waive "discrimination"

and "retaliation" claims when policies to not require same are admissible evidence of pretext, discrimination, and retaliation.[2]

39.      Sievern had determined at Plaintiff's advanced age (60s) and in light of his health problems and need for accommodations, she was going to pretextually terminate him. Her actions were transparently discriminatory and retaliatory.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination & [2] Retaliation)**
**- Against Both Defendants -**

40.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41.      Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected his ability to perform daily life activities.

42.      Plaintiff requested reasonable accommodations from Defendants as outlined in this lawsuit.

43.      Plaintiff was terminated by Defendants:

(a) For requested accommodations (constituting unlawful retaliation);

---

[2] *See Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered an amount of severance at the time of termination when policies did not require upon condition of waiving FMLA claim supported finding of pretext in FMLA claim among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was retaliatory."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant such severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, <u>as they are not governed by Fed.R.Evid. 408</u>); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012)(holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, <u>regardless if the employer "anticipated the severance agreement curtailing any potential future litigation."</u>).

(b) Because of his perceived disabilities; and

(c) Because of his actual disabilities.

44.     Defendants' termination of Plaintiff for these reasons constitute unlawful retaliation and discrimination in violation of the ADA.

**Second Cause of Action**
**Violations of the Age Discrimination in Employment Act ("ADEA")**
**(Discrimination)**
**- Against Both Defendants -**

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     Plaintiff was singled out because of age, terminated because of his age, and impermissibly perceived as being unable to effectively work fully at his advanced age with ongoing health problems.

47.     Plaintiff had been treated differently and less favorably than younger employees leading up to his termination from employment, and he could have performed many alternative roles if not terminated on account of his age (as Defendants were continually hiring and transferring relevant management).

48.     A determinative factor in Plaintiff's termination from employment wage his age, which violates the ADEA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting discrimination or retaliation in the future against any employee(s);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits;

C.      Plaintiff is to be awarded punitive or liquidated damages, as permitted by applicable law(s);

D.      Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

E.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F.      Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

G.      Plaintiff is to receive a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Bldg. 2, Ste. 128
Bensalem, PA 19020

Date: March 6, 2023

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Gary Nelson | : | CIVIL ACTION |
| v. | : | |
| Spark Therapeutics, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　　and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　　exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　　commonly referred to as complex and that need special or intense management by
　　　the court. (See reverse side of this form for a detailed explanation of special
　　　management cases.)　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　(X)

| 3/6/2023 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___1217 Shetland Court, Yardley, PA 19067___

Address of Defendant: ___3737 Market Street, Philadelphia, PA 19104; 9115 Hague Road, Indianapolis, IN 46250___

Place of Accident, Incident or Transaction: ___Defendants place of business___

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___3/6/2023___   _____   ___ARK2484 / 91538___
                        *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

### ARBITRATION CERTIFICATION

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___Ari R. Karpf___, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ___3/6/2023___   _____   ___ARK2484 / 91538___
                        *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| NELSON, GARY | SPARK THERAPEUTICS, INC., ET AL. |

| (b)   County of Residence of First Listed Plaintiff    Bucks | County of Residence of First Listed Defendant     Philadelphia |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c)   Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com | |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|  | |  |
|---|---|---|
| 1   U.S. Government Plaintiff | **X** 3   Federal Question *(U.S. Government Not a Party)* | |
| 2   U.S. Government Defendant | 4   Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' | Product Liability | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | Liability | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 340 Marine | | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | | | 751 Family and Medical Leave Act | 864 SSID Title XVI | 891 Agricultural Acts |
| | | | | 865 RSI (405(g)) | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | | |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | **X** 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

|  | |  |  |  |  |  |
|---|---|---|---|---|---|---|
| **X** 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from Another District *(specify)* | 6 Multidistrict Litigation - Transfer | 8 Multidistrict Litigation - Direct File |

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); ADEA (29USC621)

Brief description of cause:
Violations of the ADA, ADEA and the PHRA..

## VII.  REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:    **X** Yes     'No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

DATE    3/6/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

| Print | Save As... | Reset |
|---|---|---|