## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY NELSON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SPARK THERAPEUTICS, INC. and** | : | |
| **ROCHE DIAGNOSTICS CORPORATION** | : | **NO. 23-843** |

### <u>MEMORANDUM</u>

**Savage, J.**                                                          **January 10, 2024**

Following his termination, plaintiff Gary Nelson initiated this disability discrimination action under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et. seq*, against his former employer, defendant Spark Therapeutics, Inc. ("Spark").[1] Spark moves for summary judgment, arguing that Nelson cannot prove that his termination was based on discrimination. It contends that Nelson's supervisor, Luann Sievern, eliminated his position for nondiscriminatory budgetary reasons. Nelson counters that Sievern harbored animus towards him following her learning of his medical conditions and that her reduction-in-force rationale is pretext for disability discrimination.

### Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to

---

[1] Nelson filed an employment discrimination complaint against Spark and Roche Diagnostics Corporation under the ADA, the Age Discrimination in Employment Act (ADEA), and the Pennsylvania Human Relations Act (PHRA). Compl., ECF No. 1. Pursuant to the parties' stipulation, we dismissed all claims against Roche Diagnostics Corporation and Nelson's ADEA count. Order, ECF No. 25. On December 27, 2023, the parties stipulated that Nelson may file an Amended Complaint naming only Spark Therapeutics as a defendant and explicitly requesting relief under the PHRA. Stip. to Amend, ECF No. 40. They agreed that Spark's Motion for Summary Judgment filed on October 13, 2023, is intended to address all state claims under the PHRA. *Id.*

sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In examining a motion for summary judgment, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (citation omitted). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Revock v. Cowpet Bay W. Condo. Ass'n,* 853 F.3d 96, 112 (3d Cir. 2017) (citing *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659 (3d Cir. 1993)). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *In re Asbestos Prod. Liab. Litig. (No. VI),* 822 F.3d 125, 135 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

## Analysis

Nelson had a multitude of health conditions.[2] He had seven vertebrae replaced in his back, a rod inserted in his right leg, and a left knee replacement, for which he uses a cane on an "as-needed basis."[3] He has hearing loss and uses hearing aids.[4] He was diagnosed with Bradycardia and diverticulitis.[5] He takes Relpax and receives injections for migraines, takes Topomax for seizures, and receives blood transfusions for abnormal

---

[2] Spark admits only that Nelson testified in his deposition about his medical conditions. It concedes that he is disabled only for the purposes of summary judgment. Pl.'s Counter Stmt. of Material and Disputed Facts ¶¶ 41-47, ECF No. 33-1 ["PSF"] (attached to Pl.'s Mem. of L. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 33 ["Pl.'s Resp."]); Def. Spark Therapeutics, Inc.'s Resp. to Pl.'s Counterstatement of "Material and Disputed Facts" ¶¶ 41-47, ECF No. 37-1 ["DRPSF"] (attached as Ex. A to Def. Spark Therapeutics, Inc.'s Reply Br. in Supp. of Its Mot. for Summ. J., ECF No. 37 ["Def.'s Reply"]).

[3] Nelson Dep. 15:14-15; 17:2-21; 21:8-24; 26:2-12; 45:2-5, ECF No. 33-2 (attached as Ex. 3 to Pl.'s Resp.).

[4] *Id.* 53:19; 57:16-18.

[5] *Id.* 38:22-39:1; 54:6-15.

red blood cell counts.[6] He has been treated by a neurologist for hand tremors, short-term memory loss, and seizures. He has had tumors from his nose, head, and back removed.[7]

Spark does not dispute that Nelson emailed Sievern about his medical issues and healthcare appointments.[8] Nelson agrees that her responses were cordial and repeatedly reflected wishes that he get well.[9] But, Nelson testified that although their working relationship "started off well, … it quickly started degrading."[10] He described the decline as "linear … between the breakdown of our relationship with the breakdown of my health."[11] Nelson claims that Sievern ultimately terminated him because he was or was perceived as disabled.

Because Nelson is proceeding under a pretext theory and does not present any "direct evidence" of discrimination, his claims are governed by the burden-shifting *McDonnell Douglas* analysis. *Williams v. Phila. Hous. Auth. Police Dep't.*, 380 F.3d 751, 759 n.3 (3d Cir. 2004) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir.2000)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the burden-shifting *McDonnell Douglas* analysis, Nelson must first establish a *prima facie* case of discrimination. *Id.* Establishing a *prima facie* case of discrimination "'is not onerous' and poses 'a burden easily met.'" *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (quoting *Tex. Dep't of Corr. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). The

---

[6] *Id.* 52:4-7; 54: 13-15; 68:15-69:4; 80:15-19.

[7] *Id.* 55:21-56:6; 78:4-80:24.

[8] Def. Spark Therapeutics, Inc.'s Stmt. of Undisputed Material Facts ¶¶ 87, 89, 91, 93, 95, 98, 100, 102, 104, ECF No. 27-3 ["DSF"]; Pl.'s Resps. To Def.'s Purported Material and Non-Disputed Facts ¶¶ 87, 89, 91, 93, 95, 98, 100, 102, 104, ECF No. 33-3 ["PRDSF"].

[9] DSF ¶¶ 87-105; PRDSF ¶¶ 87-105.

[10] Nelson Dep. 204:2-7.

[11] *Id.* 209:12-16.

determination of whether a *prima facie* case has been established is, under most circumstances, a question of law for the court. *Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir. 2007) (citing *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir.2003) (per curiam)).

To make out a prima facie case of disability discrimination, Nelson must show that he: (1) is disabled within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job; and (3) suffered an adverse employment decision because of disability-based discrimination. *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (citing *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010)).

Nelson has made out a *prima facie* case of discrimination. Spark does not deny that he is disabled and that he was qualified to perform the essential functions of his job.[12] There is evidence, if believed, that Nelson was terminated because of his health conditions that were disabling or perceived as disabling, and for taking time off. A jury could reasonably infer discrimination from the circumstances surrounding Sievern's decision to eliminate Nelson's position.

Nelson argues that although her email exchanges were cordial, Sievern was overtly hostile towards him in their interactions following his medical disclosures and requests for intermittent leave.[13] He contends that she stopped communicating with him and assigned his peer in her stead to conduct one-on-one meetings.[14] He testified, "the more I was having to see doctors, and the more time I had off, the more strained the

---

[12] Def. Spark Therapeutics, Inc.'s Br. in Supp. of Its Mot. for Summ. J. at 13, ns. 2 & 3, ECF No. 27-1 ["DMSJ"].

[13] Pl.'s Resp. at 11.

[14] *Id.* at 17-18.

relationship became."[15] Nelson argues that Sievern's decision to terminate him on September 21, 2022, within three months of his notifying her of his declining health and need for accommodations, gives rise to a reasonable inference of disability discrimination.[16] The timing suggests a causal connection.

Nelson having established a *prima facie* case, the burden shifts to Spark to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Wishkin,* 476 F.3d at 185 (citing *McDonnell Douglas*, 411 U.S. at 802). Spark's burden is "relatively light." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (citation omitted); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). It can satisfy its burden by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763 (citation omitted). Spark's burden is one of production not of persuasion. *Fowler v. AT&T, Inc.,* 19 F.4th 292, 299, 307 (3d Cir. 2021) (citing *Walton v. Mental Health Ass'n. of Se. Pa.*, 168 F.3d 661, 667, 670 (3d Cir. 1999)). It "need not prove that the tendered reason *actually* motivated" its decision. *Fuentes*, 32 F.3d at 763 (emphasis in original) (citation omitted). It need only show that its decision could have been motivated by the proffered legitimate, nondiscriminatory reason. *Shellenberger,* 318 F.3d at 189.

Spark asserts that Sievern terminated Nelson for nondiscriminatory budgetary reasons.[17] Sievern testified that she eliminated his position because the projects he led had concluded, and that she restructured the department pursuant to a company-wide

---

[15] Nelson Dep. 209:22-210:1.

[16] Pl.'s Resp. at 18-19, n. 14.

[17] DMSJ at 23.

budget reduction initiative.[18] Sievern emailed Human Resources explaining her rationale for eliminating Nelson's position.[19] In the termination meeting, Sievern informed Nelson that his position was eliminated due to budgetary reasons and the shrinking scope of his procurement projects.[20]

Spark having satisfied its burden to articulate a legitimate nondiscriminatory reason for Nelson's termination, the burden shifts back to Nelson to discredit Spark's proffered justification or present evidence that he was terminated for a discriminatory reason. *Fowler*, 19 F.4th at 299 (citing *Walton,* 168 F.3d at 668). Nelson must produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination. *Willis v. UPMC Children's Hosp. of Pitts.,* 808 F.3d 638, 644 (3d Cir. 2015) (citation omitted).

Nelson may show pretext by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." *Id.* at 644-45 (quoting *Fuentes*, 32 F.3d at 765). He can do so by producing evidence from which a factfinder could conclude that the adverse employment action was more likely than not the result of discrimination. *Id*. at 645 (citing *Fuentes*, 32 F.3d at 764).

In other words, Nelson must proffer "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate

---

[18] Sievern Dep. 30:10-23; 61:7-63:16, ECF No. 33-2 (attached as Ex 1 to Pl.'s Resp.).

[19] Email Re: Questions, Sept. 22, 2022, ECF No. 27-5 (attached as Ex. Z to DMSJ).

[20] DSF ¶ 157; PRDSF ¶ 157.

reasons ... or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. The final burden of production "merges with the ultimate burden of persuading [the jury] that []he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

Nelson has produced evidence from which a factfinder could conclude that Spark's legitimate, non-discriminatory reason was not the real reason but was pretext for disability discrimination. He points to weaknesses in the company's proffered justification that Sievern eliminated his position as part of the company's budget reduction initiative. Nelson cites the September 14, 2022 budget memo to senior leadership which reads, "we will significantly slow external hiring while we evaluate our current organization against future needs and complete budget planning," and "any offers already extended will be honored."[21] Nelson started with Spark on May 23, 2022.[22] On September 22, 2022, only four months after he was hired, Sievern emailed the Senior Human Resources Business Partner her rationale for Nelson's pending termination.[23] He was terminated on November 9, 2022.[24]

Sievern planned Nelson's termination within four months of his start date and terminated him five and a half months after his start date. A reasonable jury could conclude that Nelson was not fired because of a budget initiative. A jury could find the stated reason is implausible, questioning why Spark would have hired a person and then fire him in less than six months unless it considered his disability and leave requests a

---

[21] Budget Memo (attached as Ex. W to ECF No. 28).

[22] DSF ¶ 49; PRDSF ¶ 49.

[23] Email Re: Questions.

[24] DSF ¶¶ 156-57; PRDSF ¶¶ 156-57.

problem.

Pointing to organization charts reflecting the company's structure from before and after his termination, Nelson also argues that his role was not actually eliminated and there was no reduction in the procurement department.[25] Indeed, his position, "Capital Sourcing Lead," remains on the organization chart and is assigned to a contractor.[26] The contractor's Consulting Agreement guaranteed a 40-hour work week to be paid at a rate of $185.00 per hour, the total value not to exceed $399,600.[27] Nelson testified that the new role is "my job because when you look at the job description, it's my work."[28]

Finally, Nelson disputes that his role was no longer needed. Spark hired Nelson to oversee the procurement strategy for three major capital project sites—3000 Market Street, 3025 Market Street, and the Gene Therapy Innovation Center (GTIC). In explaining why she was terminating Nelson, Sievern claimed that the 3000 Market Street project was "on hold due to infrastructure issues," the 3025 Market Street project was "nearing completion," and the GTIC project no longer required Nelson's higher-level management position.[29] To the contrary, Nelson testified that the 3000 Market Street work stoppage was in effect May 20, 2022, before he started working at Spark, but that work on the project continued through at least October 2022.[30] He states that even though the

---

[25] Pl.'s Resp. at 20.

[26] Org Chart Procurement Dep't., May 2022, (attached as Ex. 14 to ECF No. 33-2); Org Chart Procurement Dep't., Apr. 2023, (attached as Ex. 54 to ECF No. 38).

[27] Consulting Agreement, 8, (attached as Ex. 52 to ECF No. 38).

[28] Nelson Dep. 272:4-7.

[29] Email Re: Questions.

[30] Nelson Dep. 244:15-22.

project was halted in May 2022, he was still working on procurement and audits for it.[31]

Nelson does not dispute that the second site, 3025 Market Street, was nearly complete. Yet, as he points out, it was 90% complete when he was hired so the business needs had not changed to justify eliminating his position.[32] As for GTIC, Nelson testified that "GTIC by itself was more work than was on the table when I started with 3000 and 3025."[33] He testified that he was also tasked with lease negotiations for Spark's new project, Vivarium, which had project procurement expenditures of $60 million.[34]

We conclude that a reasonable jury could reject the proffered explanation that Nelson's termination was the result of a company budget decision. It could find that Nelson's responsibilities had not significantly changed between the time he was hired and when he was terminated. A factfinder could reasonably disbelieve Sievern's budget-reduction justification for his termination and find that his termination was the result of disability discrimination. Sievern's motive to terminate Nelson requires credibility determinations that can only be resolved by a jury. Therefore, we shall deny Spark's motion for summary judgment.

---

[31] *Id.* 249:21-250:6.

[32] *Id.* 241:3-18.

[33] *Id.* 260:3-6.

[34] *Id.* 258:3-8; 259:11-16.